**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                       No. CR 07-0073 JB

MARCIAL RAMON-TREJO,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

        **THIS MATTER** comes before the Court on the Defendant's Objections to the Pre-Sentence Report, filed March 12, 2007 (Doc. 14)("Sentencing Memorandum"). The Court held a sentencing hearing on April 13, 2007 and July 20, 2007. The primary issues are: (i) whether Defendant Marcial Ramon-Trejo's prior conviction for possession with intent to distribute methamphetamine is a drug trafficking offense warranting a 12-level increase in his offense level under the United States Sentencing Guidelines; (ii) whether, in calculating his criminal history category under the Guidelines, the Court may include a misdemeanor conviction that Ramon-Trejo received in a case in which he was not represented by counsel; and (iii) whether Ramon-Trejo is the same person that was convicted of the possession of cocaine crime listed in paragraph 22 of the Presentence Investigation Report ("PSR") that the United States Probation Office ("USPO") prepared in his case. Because Ramon-Trejo has withdrawn his objection related to his conviction for possession of cocaine, because the Court believes that the United States has shown by a preponderance of the evidence that Ramon-Trejo was convicted of possession with intent to distribute methamphetamine, and because the Court believes that the sentence the Guidelines recommend is lawful and

reasonable, the Court will overrule Ramon-Trejo's objections and impose a guideline sentence.

## FACTUAL BACKGROUND

Ramon-Trejo raises a number of objections about the USPO's calculation of his criminal history category in the PSR. Specifically, Ramon-Trejo objects to the USPO's use of three previous convictions.

### 1.  **Misdemeanor Conviction.**

On December 9, 1997, Ramon-Trejo was convicted of purchasing alcohol for an underage person, a misdemeanor, in the Rockingham County Juvenile and Domestic Relations District Court in Harrisonburg, Virginia. See PSR ¶ 20, at 5-6. Ramon-Trejo was convicted after a trial in which he did not appear and in which he was not represented by counsel. See id. ¶ 20, at 6; Sentencing Memorandum at 6. The Virginia state court imposed a $50.00 fine in association with his conviction, but did not imprison him. See PSR ¶ 20, at 5.

### 2.  **Possession of Cocaine.**

Paragraph 22 of the PSR indicates that Ramon-Trejo was convicted of possession of cocaine in Rockingham County Circuit Court on November 3, 2000. See PSR ¶ 22, at 7. Virginia court records indicate that the defendant in that case reported a date of birth of March 11, 1977 -- Ramon-Trejo's birthday -- and a social-security number that Ramon-Trejo has previously used. See Addendum to the Presentence Report at 2 ("Addendum"). The Virginia records list the defendant as 5'6" tall and 156 pounds; Ramon-Trejo is 5'6" tall and 160 pounds. See id. A presentence report completed in association with the Virginia conviction lists the defendant's parents as Leopoldo Ramon and Paz Trejos, see id.; Ramon-Trejo reported to the USPO in this case that his parents were Leopoldo Ramon-Martinez and Paz Trejos-Ramirez, see PSR ¶ 30, at 10. The conviction for possession of cocaine is also reflected on Ramon-Trejo's record based on fingerprint comparisons.

See Addendum at 2.

### 3. Conviction for Possession with Intent to Distribute Methamphetamine.

Paragraph 24 of the PSR indicates that Ramon-Trejo was convicted of possession of methamphetamine with intent to distribute in Rockingham County Circuit Court on August 22, 2005. See PSR ¶ 24, at 9. The USPO states that Ramon-Trejo was sentenced to seven-years imprisonment with six years suspended and six years probation. See Addendum at 1. Ramon-Trejo was released to immigration authorities on July 11, 2006, and deported to Mexico on July 25, 2006. See PSR ¶ 24, at 9.

On October 26, 2006, a United States Border Patrol agent encountered Ramon-Trejo walking with five other individuals along an intersection in Columbus, New Mexico. See id. ¶ 4, at 3. When questioned about his citizenship, Ramon-Trejo admitted to the agent that he was a Mexican national and present in the United States illegally. See id. Ramon-Trejo states that he understood he was not permitted to be in the United States, but returned "to pursue a better life for [him]self and [his] wife." Id. ¶ 8, at 4.

## PROCEDURAL BACKGROUND

On January 11, 2007, the United States filed an Information charging Ramon-Trejo with illegal re-entry of a deported alien while an order of exclusion, deportation, and removal was outstanding in violation of 8 U.S.C. § 1326(a) and (b). See Information, filed January 11, 2007 (Doc. 8). On the same day, the United States and Ramon-Trejo entered into a plea agreement, made pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and the United States Attorney's Fast Track Program, in which Ramon-Trejo pled guilty to the charge contained in the Information. See Fast Track Plea Agreement ¶ 3, at 2, filed January 11, 2007 (Doc. 10). Under the terms of the plea agreement, Ramon-Trejo agreed "not to seek any further reduction, departure,

deviation, or variance in the Final Adjusted Offense Level or the Criminal History Category as determined by the Court." Id. ¶ 4.g, at 3. The Court scheduled Ramon-Trejo's sentencing hearing for April 13, 2007. See Unopposed Order Continuing Sentencing Hearing, filed March 27, 2007 (Doc. 17).

In calculating Ramon-Trejo's adjusted offense level for purposes of his guideline sentence, the USPO assigned Ramon-Trejo a base offense level of 8, see U.S.S.G. § 2L1.2(a), increased his offense level 12 levels because he had previously been deported after being convicted of a felony drug trafficking offense for which the sentence imposed was thirteen months or less, see U.S.S.G. § 2L1.2(b)(1)(B), and subtracted 3 levels for Ramon-Trejo's acceptance of responsibility, see U.S.S.G. § 3E1.1. See PSR ¶¶ 10-11, 16, at 4-5. Consistent with the Fast Track Plea Agreement into which the parties entered, the USPO reduced Ramon-Trejo's offense level by an additional 2 levels for a final adjusted offense level of 15.

In calculating Ramon-Trejo's criminal history category, the USPO assigned Ramon-Trejo 1 point for his December 9, 1997 conviction for purchasing alcohol for an underage person, 2 points for his November 3, 2000 conviction for possession of cocaine, 1 point for an August 31, 2004 felony conviction for receiving stolen property, and 2 points for his April 7, 2006 conviction for possession with intent to distribute methamphetamine. See PSR ¶¶ 20-24, at 5-9. The USPO also added 2 points because Ramon-Trejo's October 26, 2006 arrest occurred while he remained on probation in association with his conviction for possession with intent to distribute methamphetamine and 1 point because the October 26, 2006 arrest occurred within two years of his having been released from custody. See id. ¶¶ 25-26, at 9-10. Ramon-Trejo's total of 9 criminal history points establishes a criminal history category of IV. Ramon-Trejo's offense level of 15, combined with his criminal history category of IV, results in a guideline sentencing range of 30 to

37 months.

Ramon-Trejo filed his objections to the PSR on March 12, 2007. Ramon-Trejo denies that his conviction for possession of methamphetamine involved possession with intent to distribute and therefore argues that the USPO erred in adding 12 levels to his base offense level under U.S.S.G. § 2L1.2(b)(1)(B). See Sentencing Memorandum at 5. Ramon-Trejo asserts that, because his methamphetamine conviction was not for a drug trafficking offense, the Court should consider the conviction to be a regular felony and enhance his base offense level by 4 levels, rather than 12 levels. See id.; U.S.S.G. § 2L1.2(b)(1)(D). In his Sentencing Memorandum, Ramon-Trejo also contends that the Court should not use his 1997 conviction for purchasing alcohol for a minor in calculating his criminal history score, because he was not represented by counsel in that matter. See Sentencing Memorandum at 6-7. Finally, Ramon-Trejo denied that he was the individual convicted for possession of cocaine on November 3, 2000 and requested that the United States produce reliable evidence to show that he was the person convicted. See id. at 7-8. Ramon-Trejo requested that the Court sentence him consistent with a final adjusted offense level of 9 and not include his convictions for purchasing alcohol for a minor or possession of cocaine in calculating his criminal history score, resulting in a criminal history category of III. An offense level of 9, combined with a criminal history category of III, results in a guideline sentencing range of 8 to 14 months.

At the April 13, 2007 sentencing hearing, the United States presented two sentencing orders from the Rockingham County Circuit Court describing sentences that "Marcial Ramon" received for possession of cocaine and possession of methamphetamine with intent to distribute. See Government's Exhibit 1, Sentencing Order, Case No. 23361; Government's Exhibit 2, Sentencing Order, Case No. 33688. Government's Exhibit 1, the sentencing order for Ramon-Trejo's conviction of possession of cocaine, is certified and includes a fingerprint card identifying Ramon-

Trejo. See Government's Exhibit 1. The United States also presented testimony from the USPO officer who prepared Ramon-Trejo's PSR at the April 13, 2007 hearing; the USPO officer testified that she sent a request to the USPO in Virginia, and that office obtained the copies of the sentencing orders that the United States had submitted to the Court. See Transcript of Hearing at 9:1-6 (Pirkovic)(taken April 13, 2007)("April 13 Transcript").[1] The officer also testified that the defendant in the Virginia cases has the same date of birth, the same social security number, and the same FBI number as Ramon-Trejo. See id. at 13:2-4 (Pirkovic). The officer admitted, however, that there was no way for her to determine positively that another individual had not pled guilty to the crimes charged using Ramon-Trejo's name. See id. at 13:7-10 (Pirkovic).

Ramon-Trejo challenged the reliability of the evidence that the United States offered, noting that the sentencing order related to Ramon-Trejo's conviction for possession of methamphetamine with intent to distribute was not certified and did not contain a fingerprint card. See id. at 7:1-11 (Pori). In light of Ramon-Trejo's arguments at the April 13, 2007 hearing, the Court granted the United States' request for a continuance so that it could supplement the record with additional information about Ramon-Trejo's previous convictions and obtain certified copies of the Rockingham County court's sentencing orders. See id. at 16:4-9 (Court); Notice of Continuation of Sentencing Hearing, filed July 2, 2007 (Doc. 20).

The Court resumed the sentencing hearing on July 20, 2007. At the July 20, 2007 hearing, the United States replaced its Exhibit 2, the sentencing order associated with Ramon-Trejo's conviction for possession of methamphetamine with intent to distribute, with a certified copy of the sentencing order. The United States also presented a copy of a fingerprint card associated with

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Ramon-Trejo's arrest for that offense. See Government's Exhibit 4. Finally, at the July 20, 2007 hearing, Ramon-Trejo withdrew his objection to the information in the PSR related to his conviction for possession of cocaine and acknowledged that the Supreme Court of the United States has authorized the use of misdemeanor convictions for which a defendant was not represented by counsel in calculating a defendant's criminal history score. See Transcript of Hearing at 4:6-12; 6:20-7:1 (Pori)(taken July 20, 2007)("July 20 Transcript"). Ramon-Trejo continues to insist, however, that his conviction for possession of methamphetamine did not involve the intent to distribute and argues that, despite the Supreme Court's authorization, the Court should not add 1 point to his criminal history score in association with his conviction for purchasing alcohol for a minor, because doing so would be unreasonable.

The United States opposes Ramon-Trejo's objections and concurs with the USPO's calculation of his guideline sentence. See United States' Response to Defendant's Objections to the Pre-Sentence Report Filed March 12, 2007 at 1, filed March 22, 2007 (Doc. 15). The United States requests that the Court impose a sentence within the guideline range the USPO has calculated. See id.

**LAW REGARDING ENHANCEMENTS FOR DRUG TRAFFICKING OFFENSES IN AN ILLEGAL RE-ENTRY CASE**

The Sentencing Guidelines provide for a graduated series of offense-level enhancements that apply to defendants who are convicted of illegal re-entry after previously being convicted of another offense. See U.S.S.G. § 2L1.2(b). Pertinent to this case, the Court should enhance a defendant's base offense level by 12 levels if the defendant has previously been convicted of a drug trafficking offense for which the sentence imposed was 13 months or less. See U.S.S.G. § 2L1.2(b)(1)(B). The Guidelines define a "drug trafficking offense" as "an offense under federal, state, or local law that

prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2 cmt. n.1(B)(iv). When a defendant has previously been convicted of a felony not specifically enumerated in U.S.S.G. § 2L1.2(b), however, the Court should add 4 levels to the defendant's base offense level. See U.S.S.G. § 2L1.2(b)(D).

### LAW REGARDING THE USE OF MISDEMEANOR CONVICTIONS IN WHICH A DEFENDANT WAS NOT REPRESENTED BY COUNSEL

A defendant whose previous conviction is constitutionally invalid because he was denied the right to counsel may challenge the use of that conviction to enhance his sentence under the Guidelines. See United States v. Cruz-Alcala, 338 F.3d 1194, 1196-97 (10th Cir. 2003). Because a "presumption of regularity" attaches to final judgments, even those that implicate the waiver of constitutional rights, Parke v. Raley, 506 U.S. 20, 29 (1992), however, "[o]nce the government establishes the existence of a prior conviction, . . . it becomes the defendant's burden to prove by a preponderance of evidence that the conviction was unconstitutional," United States v. Quintana-Ponce, 129 Fed. Appx. 473, 475 (10th Cir. 2005).

The Supreme Court has held that, under the Sixth and Fourteenth Amendments, a defendant may not be sentenced to a term of imprisonment unless he has been afforded the right to assistance of counsel in his defense. See Scott v. Illinois, 440 U.S. 367, 373-74 (1979); United States v. Cousins, 455 F.3d 1116, 1125-26 (10th Cir. 2006). The right to counsel, however, "does not extend to nonfelony trials if no term of imprisonment is actually imposed." M.L.B. v. S.L.J., 519 U.S. 102, 113 (1996). Consistent with that understanding, "an uncounseled misdemeanor conviction, [in association with which] no prison term was imposed, is also valid when used to enhance punishment

at a subsequent conviction." Nichols v. United States, 511 U.S. 738, 748-49 (1994). See U.S.S.G. § 4A1.2 cmt. background ("Prior Sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed.").

### LAW REGARDING PROOF OF PRIOR CONVICTIONS

When a prior conviction is relevant to sentencing, the United States must prove the truth of the prior conviction by a preponderance of the evidence. See United States v. Cooper, 375 F.3d 1041, 1052 (10th Cir. 2004). To prove that the accused was previously convicted of a felony offense that may be included in calculating his criminal history category, the United States must produce some evidence of the prior conviction that has "sufficient indicia of reliability to support its probable accuracy." United States v. Martinez-Jimenez, 464 F.3d 1205, 1209 (10th Cir. 2006)(quoting U.S.S.G. § 6A1.3(a))(internal alteration omitted); United States v. Esparza-Varela, 106 Fed. Appx. 1, 3 (10th Cir. 2004)(same). "The evidence offered[, however,] need not be admissible under the Federal Rules of Evidence." United States v. Esparza-Varela, 106 Fed. Appx. at 3.

The United States Court of Appeals for the Tenth Circuit has held that "a certified docket sheet is adequate, absent some contradictory evidence by the defendant, to establish the existence of a prior conviction by a preponderance of the evidence." United States v. Simpson, 94 F.3d 1373, 1381 (10th Cir. 1996)(citing United States v. Dickens, 879 F.2d 410 (8th Cir. 1989)). Nevertheless, Tenth Circuit caselaw indicates that "reliability -- not certification -- is the key for determining the sufficiency of evidence of a prior conviction." United States v. Zuniga-Chavez, 464 F.3d 1199, 1204 (10th Cir. 2006). "[A]lthough certainly preferable, certification is not a prerequisite to reliability." Id. at 1205.

Even in the absence of certified documentation, the Tenth Circuit has repeatedly affirmed

district courts who have found prior convictions based on numerous other sources of reliable evidence.  See United States v. Townley, 472 F.3d 1267, 1277 (10th Cir. 2007)(holding evidence derived from the NCIC database and that the USPO confirmed was sufficiently reliable); United States v. Martinez-Jimenez, 464 F.3d at 1211-12 (affirming district court's finding that NCIC report combined with a letter from the Supreme Court of New York confirming the defendant's previous conviction was sufficiently reliable evidence); United States v. Madrid-Flores, 129 Fed. Appx. 401, 402 (10th Cir. 2005)(finding testimony of a probation officer that a records check had been performed based on NCIC fingerprint comparisons was sufficiently reliable evidence when defendant did not present any evidence to the contrary); United States v. Esparza-Varela, 106 Fed. Appx. at 4 (holding computer printout from the Las Vegas, Nevada municipal court that contained information equivalent to that found in a docket sheet was sufficiently reliable evidence when accompanying police reports corroborated the defendant's biographical details and physical attributes).  The Court has also relied on similar evidence to find a prior conviction by a preponderance of the evidence.  In United States v. Morales-Ramirez, No. CR 05-0920 JB, 2006 U.S. Dist. LEXIS 95186 (D.N.M. Sept. 3, 2006)(Browning, J.), the Court considered whether the United States had proved a prior controlled substances felony for the purpose of applying a statutory minimum sentence for repeat drug offenders.  The United States in United States v. Morales-Ramirez presented to the Court: (i) a certified copy of a California state court's judgment of conviction for felony drug offenses and a certified copy of a "charge summary" associated with that conviction; (ii) a "pin packet" containing fingerprints and a photograph of the defendant associated with his state conviction; and (iii) testimony that the defendant's fingerprints matched the fingerprints in the pin packet.  Id. at **10-11.  The Court concluded that, based on this evidence, and absent evidence to the contrary outside of the defendant's denial, "whether the burden is by a

preponderance of the evidence or beyond a reasonable doubt, that the United States has proved, beyond a reasonable doubt, the existence of the prior conviction, and that [the defendant] was the defendant in the prior conviction." Id. at **14-15.

## ANALYSIS

Although Ramon-Trejo has made a number of objections to the guideline sentence that the USPO has calculated, he has not presented any evidence refuting the factual basis for the USPO's calculations or asserted valid legal grounds for the calculation he advances. The Court believes that the United States has proven by a preponderance of the evidence that Ramon-Trejo was convicted of possession to distribute methamphetamine with intent to distribute and concludes that it is proper for the Court to rely upon his misdemeanor offense for purchasing alcohol for a minor in calculating his criminal history score. The Court will overrule Ramon-Trejo's objections and impose a sentence within the guideline range.

**I.   RAMON-TREJO'S PRIOR CONVICTION IS FOR A DRUG TRAFFICKING OFFENSE.**

Ramon-Trejo objects to paragraphs 5, 11, and 24 of the PSR, which recommend a 12-level increase in the base offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(B), because Ramon-Trejo was allegedly previously convicted of possession with intent to distribute methamphetamine, a drug trafficking offense. Ramon-Trejo does not argue that possession with intent to distribute methamphetamine is not a drug trafficking offense, but asserts that, according to his recollection, he was only convicted of simple possession of methamphetamine for his personal use. See Sentencing Memorandum at 5-6; July 20 Transcript at 7:21-24 (Pori). Ramon-Trejo has not presented any evidence in support of his assertion that his conviction was for a mere possession offense.

While the evidence the United States presents to prove Ramon-Trejo's previous convictions need not be admissible under the Federal Rules of Evidence, "it must have 'sufficient indicia of reliability to support its probable accuracy.'" United States v. Esparza-Varela, 106 Fed. Appx. 1, 3 (10th Cir. 2004). The United States has presented a certified copy of the Rockingham County Court's sentencing order associated with his conviction for possession of methamphetamine with intent to distribute, a fingerprint card completed at the time of his arrest for that offense, and court records indicating that the defendant in that case had the same physical attributes and biographical data as Ramon-Trejo. Absent evidence to the contrary, the Court finds that this evidence is sufficiently reliable to prove by a preponderance of the evidence that Ramon-Trejo was the person convicted of possession of methamphetamine with intent to distribute. Cf. United States v. Townley, 472 F.3d at 1277; United States v. Martinez-Jimenez, 464 F.3d at 1211-12; United States v. Esparza-Varela, 106 Fed. Appx. at 4.

In his Sentencing Memorandum, Ramon-Trejo also cites to Lopez v. Gonzales, 127 S. Ct. 625, 629 (2006), for the proposition that "the simple possession of narcotics can only be considered a conviction for a felony offense subject to a four-level increase under U.S.S.G. § 2L1.2(b)(1)(D)." Sentencing Memorandum at 5. Ramon-Trejo's reference to Lopez v. Gonzales is misplaced. In Lopez v. Gonzales, the Supreme Court held that conduct that constitutes a felony under state law, but which would not constitute a felony under the federal Controlled Substances Act, could not be used as a prior felony conviction to enhance a defendant's federal sentence. See 127 S. Ct. at 632-33. Here, Ramon-Trejo is not arguing that the state crime for which he was convicted -- possession with intent to distribute methamphetamine -- does not involve conduct that the Controlled Substances Act classifies as a felony; rather, he argues that he was not convicted of that crime. Because there is no dispute that possession of methamphetamine with intent to distribute is a felony

-12-

under the Controlled Substances Act, and because the Court has found by a preponderance of the evidence that Ramon-Trejo was convicted of that crime, Lopez v. Gonzales is not controlling in this case and does not require a different result.

Based on the documentation submitted in support of the PSR, the Court finds that the United States has proven by a preponderance of the evidence that Ramon-Trejo was convicted of possession with intent to distribute methamphetamine, a drug trafficking offense. Accordingly, the Court will apply the 12-level enhancement to his base offense level consistent with U.S.S.G. § 2L1.2(b)(1)(B).

## II.   THE COURT WILL INCORPORATE RAMON-TREJO'S CONVICTION FOR PURCHASING ALCOHOL FOR A MINOR IN CALCULATING HIS CRIMINAL HISTORY SCORE.

Ramon-Trejo objects to the inclusion of the prior criminal offense for purchasing alcohol for a minor to calculate his criminal history. Ramon-Trejo contends that his prior misdemeanor conviction for furnishing alcohol to a minor should not be included in calculating his criminal history category, because the conviction was obtained in a trial where Ramon-Trejo was absent and lacked the assistance of counsel. Ramon-Trejo acknowledges that the Supreme Court has authorized the use of misdemeanor convictions obtained in cases where the defendant was not represented by counsel, but where no prison term was imposed, to enhance the punishment at a subsequent conviction. See July 20 Transcript at 6:20-7:1 (Pori); Nichols v. United States, 511 U.S. at 748-49 ("[W]e hold, consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor conviction, [in association with which] no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction."). He argues, however, that the Court should not include his misdemeanor conviction in calculating his criminal history score, because doing so results in an unreasonable sentence.

The Court notes that, now that Ramon-Trejo has withdrawn his objection to the inclusion

of his previous conviction for possession of cocaine, even if the Court were to sustain his objection to the inclusion of his misdemeanor conviction, his criminal history category would not change. Ramon-Trejo's 9 criminal history points puts him at the top of the points range for defendants within criminal history category IV.  In calculating his score of 9, the USPO only assigned Ramon-Trejo 1 point for his misdemeanor conviction for purchasing alcohol for a minor.  If the Court were to sustain his objection, and reduce his criminal history score to 8, Ramon-Trejo would still have a criminal history category of IV and his guideline sentence would be the same.

The Supreme Court has authorized the Court to incorporate a misdemeanor conviction that did not result in a prison term in calculating a defendant's criminal history score, even when the defendant lacked the assistance of counsel at the time he received that conviction.  Moreover, the Court believes that it is reasonable to include Ramon-Trejo's misdemeanor conviction to reflect his criminal history accurately.  Finally, Ramon-Trejo's guideline sentence is the same irrespective whether the Court uses the misdemeanor conviction to calculate his criminal history score. Accordingly, the Court will overrule Ramon-Trejo's objection.

### III.     THE UNITED STATES PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT RAMON-TREJO WAS CONVICTED OF POSSESSION OF COCAINE.

The United States has presented a certified copy of the Rockingham County Court's sentencing order associated with Ramon-Trejo's conviction for possession of cocaine, a fingerprint card completed at the time of his arrest for that offense, and court records indicating that the defendant in that case had the same physical attributes and biographical data as Ramon-Trejo. Because Ramon-Trejo has withdrawn his objection to the inclusion of that offense in calculating his criminal history score, and because he has not presented evidence to the contrary, the Court finds, consistent with Tenth Circuit caselaw, that this evidence is sufficiently reliable to prove by a

preponderance of the evidence that Ramon-Trejo was the person convicted of possession of cocaine.

Based on the documentation submitted in support of the PSR, the Court finds that the United States has proven by a preponderance of the evidence that Ramon-Trejo was convicted of possession of cocaine. Accordingly, in calculating Ramon-Trejo's criminal history category, the Court will attribute 2 points to his criminal history score in association with that offense.

### IV. THE SENTENCE THE GUIDELINES RECOMMEND IS REASONABLE.

Pursuant to the Fast Track Plea Agreement into which Ramon-Trejo entered, his offense level is 15; combined with his criminal history category of IV, an offense level of 15 results in a guideline sentencing range of 30 to 37 months. Among other objectives, the Court's sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide adequate deterrence to both the defendant and to the public at large. The Court believes that a sentence of 30 months reflects the seriousness of the illegal re-entry offense, but also promotes respect for the law and provides just punishment. The Court also believes that this sentence affords adequate deterrence and protects the public. The Court believes that a sentence of 30 months fully reflects each of the factors enumerated in 18 U.S.C. § 3553(a), including the need to impose uniform sentences to similarly situated defendants. In sum, the Court believes that sentence of 30 months is fair, reasonable, and sufficient without being greater than necessary to meet federal sentencing objectives.

**IT IS ORDERED** that the Defendant's Objections to the Pre-Sentence Report are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Larry Gomez
  Acting United States Attorney
Rhonda P. Backinoff
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*


Brian A. Pori
Inocente, P.C.
Albuquerque, New Mexico

    *Attorney for the Defendant*